## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

HANNAM CHAIN USA, INC.,

      *Plaintiff*,

    v.

NATIONAL LABOR RELATIONS BOARD
et al.,

      *Defendants*.

Civil Action No. 25-2896 (TJK)

### <u>MEMORANDUM OPINION</u>

Hannam Chain USA, Inc., a California-based Korean grocery chain, sued the National La-bor Relations Board and several of its officers, alleging that the NLRB's pending unfair labor practices proceeding against it is unlawful. Hannam Chain seeks preliminary relief enjoining the proceeding, which was set to begin on October 28, 2025, but was postponed because of the recent lapse in appropriations. Still, for the reasons explained below, the Court will deny the motion because under the Norris-LaGuardia Act, it lacks jurisdiction to order a preliminary injunction.

### I.  Background

#### A.  Statutory Framework

The National Labor Relations Act ("NLRA") protects the rights of employees to engage in certain "concerted activities for the purpose of collective bargaining or other mutual aid and pro-tection." 29 U.S.C. § 157. To safeguard these rights, Congress created the National Labor Rela-tions Board ("NLRB"). Among its powers, the agency oversees union elections, 29 U.S.C. § 159(c), and investigates unfair labor practice claims against employers and unions, *id.* § 160. If the agency determines that a claim has merit, an NLRB regional office issues a complaint detailing the charges and setting a hearing before an Administrative Law Judge ("ALJ"). *Id.* § 160(b). After

the hearing, the ALJ submits a report and recommendation to the agency's Board, which may dismiss the case or order the respondent to "cease and desist from such unfair labor practice" and take other "affirmative action including reinstatement of employees with or without back pay." *Id.* § 160(c). The NLRB has also determined that it has the power to order "compensation for direct or foreseeable pecuniary harms" that "result from a respondent's unfair labor practice." *Thryv, Inc.*, 372 NLRB No. 22, 14 (Dec. 13, 2022), *vacated in part by Thryv, Inc. v. NLRB*, 102 F.4th 727 (5th Cir. 2024). A party "aggrieved by a final order of the [NLRB] may obtain a review . . . in any United States court of appeals in the circuit wherein the unfair labor practice in question was alleged to have been engaged in or wherein such [party] resides or transacts business," or in the D.C. Circuit, 29 U.S.C. § 160(f), but "[n]o objection that has not been urged before the [agency] . . . shall be considered by the court" unless the failure to raise the objection is excused by "extraordinary circumstances," *id.* § 160(e).

The NLRB executes its powers and performs its duties through various officers, including its General Counsel, ALJs, and the multimember Board itself, which a chairman heads. The NLRB's General Counsel—who is "appointed by the President, by and with the advice and consent of the Senate" for a four-year term—retains "final authority" over unfair labor practices investigations and prosecutions. 29 U.S.C. § 153(d). At least three circuit courts have held that the President can remove the agency's General Counsel at will, noting the lack of any statutory provision restricting that authority, and no party here suggests otherwise. *See generally Rieth-Riley Constr. Co. v. NLRB*, 114 F.4th 519, 531 (6th Cir. 2024), *cert. denied*, 145 S. Ct. 1429 (2025); *NLRB v. Aakash, Inc.*, 58 F.4th 1099, 1104–06 (9th Cir. 2023); *Exela Enter. Sols., Inc. v. NLRB*, 32 F.4th 436, 443–45 (5th Cir. 2022).

Unlike the General Counsel, the agency's ALJs and Board Members are ostensibly

insulated from at-will removal by statute. Specifically, under the Administrative Procedure Act ("APA"), ALJs can be removed by the President only "for good cause established and determined by" the Merit Systems Protection Board ("MSPB") "on the record after opportunity for hearing before the [MSPB]," 5 U.S.C. § 7521(a), while Board Members, under the NLRA, can be removed only "for neglect of duty or malfeasance in office, but for no other cause," 29 U.S.C. § 153(a). That said, courts have cast grave doubt on the constitutionality of the ALJs and Board Members' statutory for-cause removal restrictions. The government recently argued in another case that Board Members are removable at will, and at its request the Supreme Court stayed an order enjoining the President's at-will removal of a Board Member, emphasizing that "the Constitution vests the . . . President" with the power to "remove without cause executive officers who exercise that power on his behalf." *Trump v. Wilcox*, 145 S. Ct. 1415 (2025). Similarly, a court in this district held that the ALJs' dual for-cause removal protections unconstitutionally "choke off accountability to the President" in violation of Article II. *VHS Acquisition Subsidiary No. 7 v. NLRB*, 759 F. Supp. 3d 88, 100 (D.D.C. 2024). There, the court severed from the APA language permitting the ALJs' removal "only for good cause established and determined by the [MSPB] on the record after opportunity for hearing before the Board." *Id.* at 101 (quoting 5 U.S.C. § 7521(a)); *see also Space Expl. Techs. Corp. v. NLRB* ("*SpaceX*"), 151 F.4th 761, 775 (5th Cir. 2025) (holding that the NLRB ALJs' two-layered for-cause removal restrictions are unconstitutional).

**B.    Hannam Chain's Labor Dispute & the NLRB Complaint**

Between June 2022 and September 2023, the California Restaurant and Retail Workers Union ("CRRWU"), a labor union seeking to represent Hannam Chain's employees—joined by an individual complainant—filed four unfair labor practices charges against Hannam Chain with the NLRB. ECF No. 5 ("Am. Compl.") ¶¶ 12–15; ECF No. 11-2 ("NLRB Compl."). In February

2023, CRRWU petitioned to represent employees at a particular Hannam Chain location and, in October that year, an election ensued.  ECF No. 11-1 ¶¶ 5–7.  In December 2023, the NLRB determined that CRRWU had lost the election.  *Id.* ¶ 7.

In May 2025, the NLRB filed an administrative complaint against Hannam Chain, alleging that the company had threatened and retaliated against its employees for supporting union activities and advocating for better pay, hours, and working conditions in violation of Section 8(a)(1) and (3) of the NLRA.  ECF No. 11-1 ¶ 11; NLRB Compl.  At that time, William B. Cowen, who had been appointed by President Trump in early February 2025, was serving as the agency's Acting General Counsel.  Am. Compl. ¶¶ 30–31.  As relief, the complaint seeks "payment for lost hours and/or restoration of leave/vacation taken as a result of the Respondent's unlawful conduct" and "all other relief as may be just and proper to remedy the unfair labor practices alleged."  NLRB Compl. ¶¶ 18(iii)–(iv).  The complaint also set the related administrative hearing on October 28, 2025, and "consecutive days thereafter until concluded."  *Id.* ¶ 26.  Plaintiff answered the complaint in June 2025.  ECF No. 11-3.

### C.    This Lawsuit

In August 2025, Hannam Chain sued the NLRB and several of its officers, including the Acting General Counsel and the as-yet-undetermined ALJ who will preside over the hearing ("Defendants").  ECF No. 1.  Its amended complaint brings four claims for declaratory and injunctive relief.  Am. Compl. ¶¶ 28–110.  Count I alleges that Cowen's appointment violated the NLRA and the Federal Vacancies Reform Act ("FVRA") and so his actions, including bringing the NLRB's complaint, are void.  *Id.* ¶¶ 28–49.  Count II alleges that the ALJs' statutory dual for-cause removal protections violate the Appointments Clause and both render their appointments unlawful and the agency's proceedings structurally unconstitutional.  *Id.* ¶¶ 50–67.  Count III alleges that because

the ALJs are in fact—contrary to the statute—freely removable by the President under the Consti-

tution, as are the General Counsel and NLRB Board Members, Hannam Chain will be deprived of

due process if forced to submit to a proceeding in which both the judges and prosecutors are an-

swerable to the President. *Id*. ¶¶ 68–91. Count IV alleges that if the NLRB seeks legal—rather

than equitable—relief against it, including compensatory damages, that violates its Seventh

Amendment right to a jury trial. *Id*. ¶¶ 92–110.

On September 19, 2025, Hannam Chain moved for a preliminary injunction to enjoin the

NLRB hearing. ECF No. 11. On September 22, the CRRWU moved to intervene, ECF No. 12,

which the Court permitted, ECF No. 18. The Court held a hearing on the motion on October 10.

On October 21, Defendants told the Court that the NLRB hearing was "indefinitely postponed"

because of the lapse in appropriations. ECF No. 24.

## II.    Legal Standards

"A preliminary injunction is an extraordinary remedy never awarded as of right," but only

"upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council*,

555 U.S. 7, 22, 24 (2008). To obtain that remedy, a plaintiff "must establish that he is likely to

succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary

relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."

*Id*. at 20. "[P]laintiffs bear the burden of persuasion on all four preliminary injunction factors."

*Open Top Sightseeing USA v. Mr. Sightseeing, LLC*, 48 F. Supp. 3d 87, 90 (D.D.C. 2014). In

addition, a plaintiff bears the burden of showing that the court likely has jurisdiction to grant the

relief sought. *See Brookens v. Gamble*, No. 20-cv-1740 (CRC), 2020 WL 6134266, at *11 (D.D.C.

Oct. 19, 2020), *aff'd*, No. 21-5049, 2022 WL 986213 (D.C. Cir. Mar. 28, 2022).

### III.    Analysis

At the outset, the Court must decide whether the Norris-LaGuardia Act ("NLGA"), 29 U.S.C. § 101 *et seq.*, bars the requested preliminary injunction.  The Court concludes that it does, and so its analysis begins and ends there.  The NLGA strips district courts of jurisdiction to issue injunctions in cases involving or growing out of a "labor dispute," unless the complainant can satisfy the specific conditions set forth in §§ 107–108 of the statute, one of which is to demonstrate that it will suffer "substantial and irreparable injury to [its] property" absent an injunction.  *Id.* § 107(b).  For the reasons explained below, the Court concludes that this case grows out of a "labor dispute" under the NLGA.  Moreover, an injunction cannot satisfy §§ 107–108 of the statute because Hannam Chain has not shown that "substantial and irreparable injury to [its] property" will occur without it.  Finally, the dispute does not fall within one of the two judicially created exceptions to the NLGA.  *See Lukens Steel Co. v. United Steelworkers of Am. (AFL-CIO)*, 989 F.2d 668, 676 (3d Cir. 1993).  Thus, the Court lacks jurisdiction to order an injunction and so it must deny the motion.

### A.    This Case Grows Out of a Labor Dispute for Purposes of the NLGA

The NLGA provides that no district court "shall have jurisdiction to issue any restraining order or temporary or permanent injunction in a case involving or growing out of a labor dispute, except in a strict conformity" with the statute.  29 U.S.C. § 101.  Under the Act, "[t]he term labor dispute includes any controversy concerning terms or conditions of employment."  *Id.* § 113(c).  This broad prohibition reflects Congress' intent to "tak[e] the federal courts out of the labor injunction business except in the very limited circumstances left open for federal jurisdiction in the Norris-LaGuardia Act."  *Marine Cooks & Stewards v. Panama S.S. Co.*, 362 U.S. 365, 369 (1960).  Thus, the first question in deciding whether the NLGA bars an injunction is whether this case

grows out of a "labor dispute" for purposes of that statute.

A court in this district recently (and persuasively) found that a similar case against the NLRB seeking to halt its administrative proceedings grew out of a labor dispute because it would not have existed but for that underlying dispute. *See VHS Acquisition Subsidiary No. 7 v. NLRB* ("*VHS*"), No. 24-cv-02577 (TNM), 2024 WL 4817175, at *4–*5 (D.D.C. Nov. 17, 2024), *appeal dismissed sub nom.*, No. 24-5270, 2024 WL 5232662 (D.C. Cir. Dec. 26, 2024). There, as here, the underlying dispute placed in controversy "the terms and conditions" of certain employees. *Id.* at *5. And even though there, as here, the constitutional claims in the lawsuit before the district court were somewhat attenuated from the underlying labor charges, the court still found that they were captured by the statute's broad language. As that court noted, something "grow[s] out" of something else when it arises or results from it. *Id.* (alteration in original) (quoting Webster's New Int'l Dictionary 1108 (William Allan Neilson et al. eds., 1941)). And there, as here, the claims in the federal-court lawsuit "would not exist but for the underlying" labor dispute. *Id.*[1] For the same reasons, this Court concludes that Hannam Chain's suit "involves or grows out" of a labor dispute for purposes of the Act.[2]

---

[1] The statute also provides a non-exhaustive set of situations in which a case "shall be held to involve or grow out of a labor dispute." 29 U.S.C. § 113(a). This case is captured by this provision, because it "involves"—a fantastically broad term—"persons" (not parties) who are "employees of the same employer" and "members of the same . . . organization of . . . employees," *id.*—*i.e.*, Hannam Chain's employees seeking to organize with the CRRWU. These persons are also "engaged in the same industry" and have "direct or indirect interests" in it. *Id.* § 113(b). And the underlying "dispute"—even before the Board filed its complaint—was "between one or more employers . . . and one or more employees or associations." *Id.* § 113(a)(1).

[2] Hannam Chain argues that the *VHS* decision is flawed because the court "skipped" a "textual" analysis of the NLGA and, "using the *Thunder Basin* factors[,] . . . concluded the District Court lacked jurisdiction over" some of the plaintiff's claims. ECF No. 11 at 8. Hannam Chain misunderstands *VHS*. In that case, the court had both a motion to dismiss and cross-motions for summary judgment before it—as well as a request for preliminary injunctive relief—and it first addressed whether it had jurisdiction over any of the plaintiff's claims. As part of that analysis, it

Hannam Chain points out that the Fifth Circuit recently took a different view in *SpaceX*, 151 F.4th at 770. In that case, a panel held that "structural claim[s]" challenging the constitutionality of the NLRB's ALJ and Board member removal protections did not grow out of a "labor dispute" because they did not concern quintessential labor issues such as "terms or conditions of employment, or the association or representation of persons in negotiating, fixing, maintaining, changing, or seeking to arrange such terms[,] . . . wages, hours, working conditions, or even union representation[,] . . . employee boycotts, union organization, or labor strikes. Nor . . . [did they] seek to block the Board from adjudicating any particular unfair-labor-practice charge." *Id*. To this Court, however, *VHS* is more faithful to the statute and the Supreme Court's guidance that it should be construed broadly. The NLGA's § 101 bar covers any case that "involves or grows out of" a labor dispute, not only those that directly implicate labor disputes or even purport to adjudicate them. *See VHS*, 2024 WL 4817175, at *5. The outgrowth from a "labor dispute" to this case is obvious. "[I]n short, no labor dispute, no lawsuit." *Hoffmann Bros. Heating & Air Conditioning, Inc. v. NLRB*, 2025 WL 2695565, at *3 (E.D. Mo. Sept. 22, 2025).

This conclusion also aligns with the decisions of most courts to consider the issue. The Sixth Circuit held that the NLGA barred a district court from issuing an injunction in a § 1983 case in which a manufacturer alleged that a city had unlawfully shuttered its factory during a labor strike. *See Armco, Inc. v. United Steelworkers*, 280 F.3d 669, 680–81 (6th Cir. 2002). Although the city was not party to the employer-union dispute and the unions were not party to the § 1983

---

applied the *Thunder Basin* test. *See VHS*, 2024 WL 4817175, at *3 (citing *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 212–13 (1994)). After concluding that it had jurisdiction over one claim, the court then considered whether the NLGA stripped it of jurisdiction to enter an injunction—including whether the case arose or grew out of a labor dispute—and concluded it did. *Id*. at *5. The court "skipped" no required steps. At any rate, here, the Court has jurisdiction over Counts II and III, and no party suggests otherwise. So the Court turns to determining whether it lacks jurisdiction to enter a preliminary injunction under the NLGA.

action, the court held that § 101 applied because the § 1983 claim "would not exist but for the underlying" company-union labor dispute. *Id.* And at least three district courts have held that the NLGA bars injunctive relief against the NLRB in similar cases. *See, e.g.*, *Red Rock Resorts, Inc. v. NLRB*, 2025 WL 2784607, at *3 (D. Nev. Sept. 30, 2025) (claims against the NLRB "based on allegedly unconstitutional removal protections, separation of powers violations, and violation of Plaintiffs' right to a jury trial" grew out of a labor dispute); *Hoffmann Bros.*, 2025 WL 2695565, at *1 (NLGA barred TRO for claims "alleg[ing] that the removal restrictions of Board ALJs are unconstitutional"); *Amazon.com Servs. LLC v. NLRB*, 2025 WL 466262, at *3–*5 (C.D. Cal. Feb. 5, 2025) (suit "center[ing] on the constitutionality of for-cause removal protections for NLRB Board Members and ALJs" grew out of company's labor dispute with unions).

Hannam Chain makes a few stabs at arguing that § 101 does not apply here, but none are persuasive. First, it says that the NLGA only bars injunctions "to prohibit any person or persons participating or interested in" a labor dispute, ECF No. 23 at 7 (emphasis removed) (quoting 29 U.S.C. § 104), and because "[t]he NLRB clearly is not a person," the statute poses no bar to injunctive relief, *id.* But there is no reason to think that the prohibition on injunctions against "persons participating or interested in . . . [a labor] dispute" in *§ 104* cabins the broader prohibition in *§ 101*. And it cites no case that has ever concluded as much.

Second, Hannam Chain argues that the Court can enjoin the NLRB hearing because § 10(h) of the NLRA "expressly exempt[s]" litigation by the NLRB from the NLGA. ECF No. 28 at 7. Section 10(h) provides that "[w]hen granting appropriate temporary relief or a restraining order, or making and entering a decree enforcing, modifying, and enforcing as so modified or setting aside in whole or in part an order of the Board, as provided in this section, the jurisdiction of courts sitting in equity shall not be limited by" the NLGA. *See* 29 U.S.C. § 160(h). In Hannam Chain's

view, this provision allows federal courts to enjoin "proceedings *by or against* the NLRB," including the pending administrative hearing. ECF No. 23 at 8 (emphasis in original).

Hannam Chain is mistaken. Congress enacted § 10(h) to preserve the ability of federal courts to *enforce* NLRB orders, not to exempt from the NLGA's prohibitions orders to enjoin NLRB proceedings. As the Supreme Court explained, the NLRA "made employers subject to court orders enforcing Board cease-and-desist orders. Those orders, or many of them, were of the kind Norris-LaGuardia, on its face, prohibited." *Muniz v. Hoffman*, 422 U.S. 454, 461 (1975). To address that issue, and preserve the ability of federal courts to enforce NLRB orders, Congress amended the NLRA to "permit[] injunctions to be obtained, not by private litigants, but only at the instance of the [NLRB] and the Attorney General." *Sinclair Ref. Co. v. Atkinson*, 370 U.S. 195, 204 (1962), *overruled on other grounds by Boys Markets, Inc. v. Retail Clerks Union, Loc. 770*, 398 U.S. 235 (1970). In short, § 10(h) created an exception to the NLGA's jurisdictional bar "only where an injunction is sought by the [NLRB], not where proceedings are instituted by a private party." *Bakery Sales Drivers Loc. Union No. 33 v. Wagshal*, 333 U.S. 437, 442 (1948).[3]

### B. Hannam Chain Has Not Satisfied §§ 107–108 of the NLGA Because It Has Not Shown that Its Property Will Suffer Substantial and Irreparable Injury Without an Injunction

Because this case grows out of a labor dispute, the Court must next determine whether Hannam Chain has fulfilled the narrow statutory requirements for the Court to grant injunctive

---

[3] Hannam Chain also argues that even if the Court were to find that this case grows out of a "labor dispute," it should still grant injunctive relief because the NLGA must "yield to the Court's paramount duty to uphold the U.S. Constitution," citing *Boys Markets, Inc. v. Retail Clerks Union, Loc.* 770, 398 U.S. 235 (1970). ECF No. 23 at 11. But the Court lacks discretion to ignore statutes that limit its jurisdiction, and unsurprisingly, *Boys Markets* does not say otherwise. *Boys Markets* simply held, in line with typical principles of statutory construction, that the NLGA should be read in harmony with other federal statutes favoring the enforcement of arbitration provisions in collective-bargaining agreements, an issue absent here. 398 U.S. at 254.

relief.  *See* 29 U.S.C. §§ 107–108.  Hannam Chain falls short on at least one; it has not shown that it will suffer "substantial and irreparable injury to [its] property" absent an injunction.  *Id.* § 107(b). Indeed, this Circuit's precedent "has set a high standard for irreparable injury," requiring a movant to show an injury "beyond remediation," *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006), that is "both certain and great; . . . actual and not theoretical," *Wis. Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985) (per curiam).  Under that precedent, Hannam Chaim comes up short.

To start, Hannam Chain has not identified any of its "property" that would be substantially and irreparably injured without an injunction.  29 U.S.C. § 107(b).  That alone is enough to con-clude that it cannot satisfy the NLGA.  That said, the Court will proceed to explain why Hannam Chain has not shown that it will suffer *any* irreparable injury absent preliminary relief—whether to its property or anything else.[4]

Beginning with any harm that may flow from Counts II and III, Hannam Chain asserts that the ALJs' appointments and the overall structure of the agency, in which all the relevant officers are answerable to the President, violate the Constitution.  ECF No. 11 at 29.  It therefore argues that it would suffer irreparable harm if forced into structurally "unconstitutional proceedings."  *Id.* As explained below, these arguments are foreclosed by the D.C. Circuit's reasoning in *Alpine Securities Corp. v. FINRA*, 121 F.4th 1314 (D.C. Cir. 2024), *cert. denied*, 145 S. Ct. 2751 (2025).

In *Alpine*, a plaintiff brought a similar Appointments Clause-based challenge to FINRA's hearing officers.  *See generally id.* at 1332–36.  The plaintiff asserted irreparable harm from "being

---

[4] For these reasons, even if the NLGA did not bar the Court from entering a preliminary injunction, Hannam Chain would not be entitled to one.  "[F]ailure to show any irreparable harm," standing alone, is "grounds for refusing to issue a preliminary injunction, even if the other three factors entering the calculus merit such relief."  *Chaplaincy of Full Gospel Churches*, 454 F.3d at 297.

subjected to an unconstitutional proceeding before an unconstitutional body." *Id*. at 1314.  Arguing that "constitutional violations" stemming from the hearing "constitute[] irreparable injury[,]" the plaintiff sought a preliminary injunction to halt FINRA's proceedings.  *Id*. at 1333 (alterations in original).  The D.C. Circuit held that the plaintiff had failed to meet its burden to show irreparable harm on this ground, reasoning that a line of cases in this Circuit, taken together, held that "being investigated by, or participating in a proceeding before, an unconstitutionally appointed officer is not, without more, an injury that necessitates preliminary injunctive relief.  And [plaintiff] has not asserted anything more." *Id.* at 1334.  So too here.

To be sure, *Alpine* did not involve a claim asserting—as Hannam Chain does in Count III— harm from an unconstitutional "structure where the judge, jury, and prosecutor all answer to the same master."  ECF No. 23 at 3.  But the same reasoning applies, because this claim is still fundamentally about "being subjected to an unconstitutional proceeding before an unconstitutional body." *Alpine*, 121 F.4th at 1332.  Indeed, in *Axon Enterprise v. Federal Trade Commission*, the Supreme Court characterized the plaintiff's ALJ-removal-protections claim as cut from the same cloth as its claim challenging the FTC's "combination of prosecutorial and adjudicatory functions" in a single agency.  598 U.S. 175, 180 (2023).  The Court reasoned that, like plaintiff's removal-protections claim, its "combination-of-functions claim similarly goes to the core of the [agency's] existence, given that the agency indeed houses . . . both prosecutorial and adjudicative activities," and it challenges "not . . . any specific substantive decision" like whether to "fin[e] a company" but "the structure or very existence of [the] agency." *Id.* at 189.[5]

---

[5] Hannam Chain also characterizes Counts II and III as alleging that the ALJs' appointments and the structure of the NLRB violate separation-of-powers principles. *See* ECF No. 11 at 24; ECF No. 23 at 4, 12, 24, 25.  But doing so does not change the outcome for showing irreparable harm.  *Alpine* also reaffirmed that an "alleged separation-of-powers injury is [not] by its very

In response, Hannam Chain, like the *Alpine* plaintiff, "anchor[s] its irreparable harm argument in" *Axon*, arguing that it "mandates a finding of irreparable harm." *Id*. at 1335–36; *see also* ECF No. 11 at 28–29; ECF No. 23 at 23–25. Not so. In *Alpine*, the Circuit found otherwise, distinguishing *Axon* as a case about jurisdiction, not irreparable harm. *See* 121 F.4th at 1135–36. And in the end, the Court cannot disregard *Alpine*; it must faithfully apply it. Doing so, it concludes that Hannam Chain has not shown that it is likely to suffer irreparable harm from these claims. *See VHS*, 2024 WL 4817175, at *5 ("[U]nder controlling law, . . . naked invocations of structural harm cannot suffice" to show irreparable harm).

Hannam Chain again points to the Fifth Circuit's *SpaceX* decision, in which the panel relied on *Axon* to conclude that the plaintiff had shown a likelihood of irreparable harm under similar circumstances. *See* ECF No. 11 at 29–30 (citing *SpaceX*, 151 F.4th at 780). But to state the obvious, the Fifth Circuit—unlike this Court—was not bound by the D.C. Circuit's interpretation of *Axon* in *Alpine*. Even if Hannam Chain is right that the best reading of *Axon* supports its irreparable harm argument, this Court "lacks the authority to circumvent binding precedent by reading between the lines." *VHS*, 2024 WL 4817175, at *6.

Hannam Chain contends that *Alpine* is inapt because FINRA is a private entity and the NLRB is a government agency. *See* ECF No. 23 at 3, 22–23. But nothing in *Alpine*'s reasoning suggests that distinction made a difference. To the contrary, the key cases cited by the panel in *Alpine* for the proposition that "being investigated by, or participating in a proceeding before, an unconstitutionally appointed officer is not, without more, an injury that necessitates preliminary injunctive relief," 121 F.4th at 1334, all involved government agencies. *See generally, e.g.*, *John*

nature irreparable." 121 F.4th at 1334 (quoting *John Doe Co. v. CFPB*, 849 F.3d 1129, 1135 (D.C. Cir. 2017)).

*Doe Co. v. CFPB*, 849 F.3d 1129 (D.C. Cir. 2017) (constitutional challenge to CFPB's single-director structure); *In re al-Nashiri*, 791 F.3d 71 (D.C. Cir. 2015) (separation-of-powers challenge to military commission); *Deaver v. Seymour*, 822 F.2d 66 (D.C. Cir. 1987) (challenge to authority and non-removability of independent special counsel).

Moving on to Count I, Hannam Chain cannot show irreparable harm flowing from that claim either. There, it alleges that Cowen's appointment as Acting General Counsel was invalid under both the NLRA and FVRA, and thus his actions in the administrative case against it are void. ECF No. 11 at 4, 16. The Court lacks jurisdiction over this claim. "A special statutory review scheme . . . may preclude district courts from exercising jurisdiction over challenges to agency action." *Axon*, 598 U.S. at 185. As relevant here, in general, "a party aggrieved by a decision of the [NLRB] must make its case first to the agency and then to the court of appeals." *VHS*, 2024 WL 4817175, at *2 (citing 29 U.S.C. § 160(f)).

Hannam Chain protests that it need not do so. And it points out that the Supreme Court has identified three considerations—known as the *Thunder Basin* factors—to determine whether specific claims concerning agency action are of the type Congress intended to be reviewed within this statutory scheme. *See Axon*, 598 U.S. at 186. They are: (1) "[C]ould precluding district court jurisdiction foreclose all meaningful review of the claim?"; (2) "[I]s the claim wholly collateral to the statute's review provisions?"; and (3) "[I]s the claim outside the agency's expertise?" *Id.* (quoting *Thunder Basin*, 510 U.S. at 212–13). "When the answer to all three questions is yes, it is presumed that Congress does not intend to limit jurisdiction." *Id.* (cleaned up). But the "ultimate question is how best to understand what Congress has done—whether the statutory review scheme, though exclusive where it applies, reaches the claim in question." *Id.*

Hannam Chain's challenge to Cowen's appointment fails at least the first two *Thunder*

*Basin* factors, and the Court concludes that it falls outside this Court's jurisdiction.  This Circuit's precedent confirms as much.  In *SW General v. NLRB*, 796 F.3d 67, 70 (D.C. Cir. 2015), *aff'd*, 580 U.S. 288 (2017), the D.C. Circuit reviewed an objection, raised first before the NLRB, challenging an unfair labor practices complaint "on the ground that [the] Acting General Counsel . . . was serving in violation of the FVRA."  *Id.* at 72.  The Circuit agreed that the Acting General Counsel had been improperly appointed, granted the petition for review, and vacated the Board's order. *See id.* at 83.  That precedent makes clear that Hannam Chain *can* seek meaningful post-hearing review of this claim in the court of appeals.  And that result is not a one-off; similar challenges to the authority of the NLRB's General Counsel have been adjudicated by other courts of appeal.  *See Exela Enter. Sols., Inc.*, 32 F.4th at 440–45; *Aakash, Inc.*, 58 F.4th at 1102–06; *Rieth-Riley Construction*, 114 F.4th at 527–31.  Likewise, with respect to the second *Thunder Basin* factor, it is hard to see how the claim could be considered wholly collateral to the statute's review provisions, since courts of appeal have repeatedly considered similar claims under those exact provisions.[6] For these reasons, the Court lacks jurisdiction over this claim, and so it cannot be the source of irreparable harm for purposes of a preliminary injunction.  *VHS*, 2024 WL 4817175, at *5; *cf. Veterans Command, LLC v. United States*, 2022 WL 566466, at *1 (D.C. Cir. Feb. 22, 2022) (affirming denial of a motion for a preliminary injunction based on lack of subject matter jurisdiction).

In any event, if being subjected to an "unconstitutional proceeding before an unconstitutional body" does not (by itself) create irreparable harm in this Circuit under *Alpine*, *see* 121 F.4th

---

[6] To the extent Hannam Chain argues that jurisdiction over this claim is proper under *Axon*, *see* ECF No. 23 at 24, it is mistaken.  *Axon* involved "structural *constitutional* claims," *Axon*, 598 U.S. at 91 (emphasis added), whereas Hannam Chain argues here that "[t]he Acting General Counsel's appointment was *statutorily* invalid," ECF No. 23 at 2 (emphasis added).

at 1332, it is hard to see how being subjected to an action overseen by an improperly appointed NLRB General Counsel could do so.  Indeed, all Hannam Chain seems to argue is that Cowen's actions are "non-harmless," which is a far cry from showing that they meet the high burden of irreparable harm.  ECF No. 11 at 17, 29.  And in the end, any injury stemming from an improperly appointed General Counsel is not "beyond remediation," since, as noted above, Hannam Chain can make this argument before the agency and, if necessary, before the court of appeals.  *See SW Gen.*, 796 F.3d at 70.

Hannam Chain's final claim, in Count IV, concerns its jury trial rights under the Seventh Amendment.  It contends that "it is entitled to a jury trial" under the Seventh Amendment if the NLRB "seeks legal relief against it," ECF No. 11 at 25—in particular, compensatory or consequential damages—and that the NLRB lacks statutory authority to do so anyway.  Thus, Hannam Chain argues that it will suffer irreparable harm if "ordered to pay . . . impermissible and unconstitutional consequential damages" in violation of its Seventh Amendment rights.  *Id.* at 28.  The Court concludes, for reasons the court explained in *VHS*, that it lacks jurisdiction over this claim as well.[7]  *See VHS*, 2024 WL 4817175, at *3–*4.  For that reason, it cannot be the source of irreparable harm.  *Id.* at *5.

---

[7] *VHS* involved an identical claim against the NLRB asserting that the agency had "infringe[d] upon its Seventh Amendment right to a jury trial," *id.* at *3, by seeking consequential damages and the adjudication of "private rights," *id.* at *4.  The court held that it lacked jurisdiction over the claim.  *Id.*  This Court agrees.  Hannam Chain's Seventh Amendment claim fails at least the first two *Thunder Basin* factors.  Precluding district court review would hardly foreclose all meaningful review of the claim, because like the plaintiff in *VHS*, Hannam Chain may seek review of any damages award or relief imposed in the court of appeals after the NLRB hearing concludes.  *See VHS*, 2024 WL 4817175, at *3.  And it is hard to see how a claim directed at any damages or relief awarded in the NLRB proceeding is somehow collateral to the provisions for review of that same proceeding.  Rather, "[c]ollateralism kicks in when a party's claims 'have nothing to do with the [matters] [the agency] would adjudicate in assessing the charges against [the plaintiff].'"  *VHS*, 2024 WL 4817175, at *3 (quoting *Axon*, 598 U.S. at 193).

At any rate, Hannam Chain fails to explain how it is likely it will be harmed, much less irreparably harmed, by a compensatory or consequential damages award which the agency has not even ordered, much less clearly signaled its intent to seek.  Along with requiring Hannam Chain to pay "ma[k]e whole" relief to its employees, the NLRB complaint "seeks all other relief as may be just and proper to remedy the unfair labor practices alleged."  ECF No. 11-2 ¶¶ 18 (iii)–(iv).  But the complaint says nothing specific about the agency's intent to seek consequential damages against Hannam Chain, and Hannam Chain points to nothing else reflecting any such intent.  Thus, at this point, any harm that may flow from this claim is merely "theoretical."  *Wis. Gas Co*., 758 F.2d at 674.  And even allegations of constitutional harm that are "purely speculative" do not demonstrate irreparable injury warranting preliminary injunctive relief.  *Altschuld v. Raimondo*, No. 21-cv-02779 (TSC), 2021 WL 6113563, at *5 (D.D.C. Nov. 8, 2021).  Moreover, any injury stemming from a consequential damages  award is not "beyond remediation," since Hannam Chain "can seek review of the NLRB's decision"—including any damages award or relief imposed—"in the court of appeals."  *Ares Collective Grp. LLC v. NLRB*, 2024 WL 4581436, at *2 (D. Ariz. Oct. 25, 2024).  For these reasons, many courts have rejected similar arguments that irreparable harm can result from Seventh Amendment claims against the NLRB.[8]

## C.    Hannam Chain's Claims Do Not Fall Within the Judicially Created Exceptions to the NLGA

Last, the Court notes that Hannam Chain's claims fall outside the judicially created exceptions to the NLGA.  A district court can enjoin a labor dispute "when necessary to reconcile Norris-

---

[8] *See, e.g*., *Meharry Med. Coll. v. NLRB*, 2025 WL 1372842, at *5 (M.D. Tenn. May 12, 2025); *YAPP USA Auto. Sys., Inc. v. NLRB*, 748 F. Supp. 3d 497, 517 (E.D. Mich. 2024), *appeal dismissed*, No. 24-1754, 2025 WL 2606098 (6th Cir. Aug. 4, 2025); *HonorHealth v. NLRB*, 2024 WL 4769772, at *4 (D. Ariz. Nov. 13, 2024); *Amazon.com*, 2025 WL 466262, at *6; *Ares Collective Grp.*, 2024 WL 4581436, at *2.

LaGuardia with the mandates of a specific federal [labor] statute." *Dist. 29, United Mine Workers of Am. v. New Beckley Min. Corp.*, 895 F.2d 942, 946 (4th Cir. 1990) (cleaned up); *see Bhd. of R. R. Trainmen v. Chicago R. & I. R. Co.*, 353 U.S. 30, 40 (1957).  Injunctions are also allowed "when necessary to accommodate Norris-LaGuardia's strong policy favoring arbitration." *Dist. 29*, 895 F.2d at 946.  No party suggests that either exception is relevant here.

*    *    *

For these reasons, the Court concludes that this case grows out of a labor dispute under the NLGA, an injunction cannot satisfy §§ 107–108 of the statute because Hannam Chain has not shown that "substantial and irreparable injury" to its property will occur without it, and the dispute does not fall within either of the two judicially created exceptions to the NLGA.  Thus, the NLGA strips the Court of jurisdiction to enter a preliminary injunction.

## IV.    Conclusion

For all the above reasons, the Court will deny Hannam Chain's Motion for a Preliminary Injunction.  A separate order will issue.

/s/ Timothy J. Kelly
TIMOTHY J. KELLY
United States District Judge

Date: November 17, 2025